at OWL. Thank you, Your Honors. May it please the Court, Mary Ann Dugan, representing the appellants, the Allegheny Defense Project, and the Sierra Club. I would like to reserve five minutes for rebuttal. Five minutes? That's a lot. We're going to then hold you to your ten-minute argument. Okay, I will do my best. First, I would like to address the Court's order asking us to address Internal Operating Rule 9.1. That rule is not particularly surprising. It is kind of something we learn in first-year law school, which is that precedential opinions are precedential. What the rule says is that this panel may not overrule the holding of the prior decision. And, of course, what that rule says in the negative is that if there is something, a decision that is not designated as precedential or is designated as not precedential, then it is not precedent. But the prior panel holding – It was a precedential opinion. Pardon? That was a precedential opinion. Yes, it was. And the holding was that minor run was likely to succeed on the merits, not that it had succeeded on the merits. And that is stated in the prior opinion at pages 254 and 255. It also – the prior panel also stated, for example, quote, on the record before it, the district court properly concluded various things. Was there anything added to the record once it went back down to the district court? Yes, Your Honor. We added to the record the substantial amount of legislative history that had not been excavated from the depths of 1911, 1913 congressional proceedings. How many – that was, what, two and a half years into the case? What was – when we went back. When you decided that this legislative history was controlling and important. I don't know that it's controlling. I don't know that legislative history is ever controlling. Well, you are – well, I'd say amen to that. But you are arguing that the reason that we need to look at this again is because the original panel didn't take the legislative history into account, right? That's one of the reasons, yes, Your Honor. I think that in the words of the ACLU versus Mukasey decision in this circuit, it would be clear error and or manifest injustice to stick with your prior holding, which frankly does not comport with both either the legislative history or some of the controlling case laws, such as the Kleppe decision from the Supreme Court. And also, when the court – this panel, prior panel, excuse me, stated that it was not presented with a clear indication of congressional intent. This panel indicated that it was – did not have that before it, which is not something that had been previously indicated as something that would be controlling, as you put it, on the decision. Let me back up to your first point, which I assume was that you would like to characterize the prior presidential opinion as holding no likelihood of success on the merits, but stating that all the discussion of NEPA, et cetera, was not a holding? Is that your argument? Well, in general, the Supreme Court has said in University of Texas versus Kamenich that generally a decision on a preliminary injunction appeal is not law of the case, is not binding on subsequent panels. Are you familiar with our opinion in the Pitt News case? I'm not – I don't think so, Your Honor. I'm not sure off the top of my head. It was cited by your opposing counsel in the answering brief, and you did not respond to it in the reply brief. It says if the first panel doesn't stop at the question of likelihood of success and instead addresses the merits, the later panel, in accordance with our court's traditional practice, should regard itself as bound by the prior panel opinion. And that's a presidential opinion, and I assume that's kind of a holding of that opinion also. So how do we get around that? The prior panel did not, if I remember what you just said, if the prior panel had said that minored run was likely to succeed and then went on to say, and we're going to make a decision on the merits, that's not what happened in the prior panel. Are you saying that in order for the holding to be a holding, it has to say, and now we're making a holding? Because it didn't use those words, but it went on to say, in fact, explicitly to say, we think this is going to be helpful if we dispose of the issues now instead of across a series of cases, and we think this is going to help with the finality of it, and it laid it out. It interpreted the text of the Weeks Act. It dealt with the arguments you want dealt with, which is the, quote, only, unquote, argument. That is that it somehow read only in incorrectly. It addressed why it thought that was a correct way to view the text because otherwise the limitations in the act would be superfluous. It raised a constitutional concern. If it weren't addressed that way, it talked about the Fourth Circuit case, which you folks don't like, obviously, but which the court found persuasive. It went into all of that. How is that not a holding of that panel? Because it was not necessary to the outcome of the opinion. The outcome of the opinion was that Minard Run was likely to succeed on the merits. If the court prior panel had explicitly said, we find not only that they are likely to succeed, but that they have succeeded on the merits, the holding was that Minard Run was likely to succeed on the merits. But in Pitt News, we didn't say that that's what we followed. We said that if we don't stop with the likelihood of success, but address the merits, then we are bound. How do we get around that presidential opinion? With due respect, every preliminary injunction appeal is going to have to address the merits to decide whether. To a certain extent, to say likelihood of success. And we could have said, Judge Roth could have said, you know, quacks like a duck, that smells like, looks like a duck. You know, it looks like it's likely. No, this could not be a clearer determination that NEPA does not apply. I mean, there's just no hesitation at all. Okay. Well, I would also like to add that furthermore, the broad authority, quote, unquote, this court rejected in the prior appeal at page 254 was the moratorium. This is also made clear in page 255, note 13, where the court said appellees do not object to NEPA analysis. They object only to the service's moratorium on notices to proceed until NEPA analysis is complete. We are not arguing that the moratorium itself was proper. We are arguing a totally different issue, which is still open before the court, which is under minor run one, can the Forest Service complete NEPA analysis and still comply with state law as articulated in minor run? Hold on just a second, if you would, please, Ms. Dugan. We're trying to get you to meet head-on the Pitt News ruling, and it's also the ruling from ACLU versus Mukasey. It's also something that's alluded to in the Thornburg versus American College of Obstetricians case from the Supreme Court, which was overruled on other grounds, but on this point seems to still be good law, that when there's not a factual matter in dispute and the question is one of law, a court can go beyond likelihood of success on the merits in reviewing a preliminary injunction ruling and deal with the merits, and if it does that, that's law of the case. So can you, first, would you agree that that is, that's a statement of law that's binding on us? That being the state? That being that if the Court of Appeals goes beyond the likelihood of success and on a question of law makes a determination on the merits, that that binds a subsequent panel. Subject to the exceptions set forth in ACLU versus Mukasey, of which we argue the third exception applies, which is that it was clear error and or that manifest. Yes, thank you. That's a fair caveat. There is that safety valve. Okay. So if we read Judge Roth's opinion for the panel in Minard Run 3 and think she pretty clearly on behalf of that panel dealt with more than likelihood of success on the merits, we're bound unless you can show exceptional circumstances, right? If that's how you interpret that prior opinion, which I continue to disagree with respectfully. Right. And the reason you disagree with it is because you think that all that stuff she said about NEPA was not necessary to finding, saying anything about likelihood of success on the merits. It's all dicta. Is that right? That's part of the argument. The other part is as I was kind of getting into it. Hold on. Let's deal with that. If that were really the way to approach it, then any time a court went beyond likelihood of success on the merits, it would always be dicta. And the rule laid down in Pitt News and in Mukasey would be nonsense, right? No, I don't. It has to be the case that a court can go beyond likelihood of success on the merits without wandering into dicta that's irrelevant to a later panel, doesn't it? I think that in order to comport with the University of Texas versus Kamenish case, which is binding beyond this circuit, including this circuit, I see I'm out of time. May I complete my response? To comport with that case, this circuit would have to recognize that a PI decision is generally not binding on the merits, that to go beyond that and say it is binding on the merits, the prior panel should have been explicit in saying so, and then the case would have been over. And we wouldn't be back here, but that is not what happened. Furthermore, there are – But you did say in your brief that this court unnecessarily and erroneously ruled that USFS does not have the legal right to place reasonable conditions on access to the surface of national parks in order to protect property, federal property. I mean, you urged that to us, that our ruling was erroneous. Manifestly unjust and clearly erroneous. And in the alternative, that under state law, under Minard Run 1 as a simple landowner, the Forest Service has sufficient authority. If you read the quotes in Minard Run about protecting the surface, unnecessary disturbance, looking at alternatives, all of those things are what go into a NEPA analysis. In the 80s, they did hundreds of environmental assessments, did not slow down the oil and gas industry, and that's all we are asking for. Did you file a petition for rehearing from the original Minard Run? Yes, Your Honor. Okay. Thank you. All right, we'll hear from you on rebuttal. May it please the Court, Timothy McCrum for the Pennsylvania Independent Oil and Gas Association. Bet we know what you're going to argue. The Pennsylvania Independent Oil and Gas Association, or PIOGA, initiated this litigation in June of 2009 to challenge a forest-wide ban on new oil and gas drilling across the Allegheny National Forest, which encompasses about 500,000 acres in northwestern Pennsylvania. Sure. We're pretty familiar with the background here. Can we get to the point pressed by your opposing counsel, which is that there really isn't a binding ruling here in place? And in talking about that, address if you would whether we should be concerned about any sort of fairness issue that this was up on a PI ruling and the Third Circuit suddenly wanders off into a merits decision. Certainly, Your Honor. When you look at the precedential opinion of this court issued in September of 2011 with a minor amendment in early 2012, it clearly addressed the pure legal issues that were before the court bearing on the merits. It stated that it referred to the fact that there were a number of related cases pending in the district court below, and it expressly stated there was a desire of this court to address these legal issues comprehensively in this appeal and avoid piecemeal litigation. So that was a clear signal by the court that it was attempting to address the pure legal issues in a clear ruling, as the court has the authority to do under the ACLU, the Mukasey precedent, as well as the Pitt News precedent. Let me ask a question that just occurred to me. Your colleague indicated that there was an addition, if you will, of legislative history when it went back to the district court. What's your position on that with respect to whether that changes the landscape, if you will? Sure, Judge Riddell. I'll address that question and try to at the same time address the further question from Judge Jordan that I wasn't able to get to regarding the equities and whether there was an adequate consideration of these issues in the district court during the preliminary injunction phase. Although this was a preliminary injunction motion filed in early June of 2009, there was extensive briefing prior to the first hearing before the district court in late July 2009, which was a half-day argument with all counsel present. Then an evidentiary hearing was set, which encompassed three days in late August 2009, numerous exhibits received from all parties, including the ADPCR Club appellants, and then extensive post-hearing briefing in the latter part of September 2009. The district court didn't render the preliminary injunction order, which was a very detailed order, until December 15, 2009. Then the government moved for reconsideration or clarification, which the court heard another hearing on in March of 2010. That was all before the appeal to this court. Right. So a well-developed record, we understand. And legislative history wasn't argued at that point, is that correct? The legislative history arguments, the precise arguments that are being put forth now were not argued in that early phase of the case. An important point is that legislative history was available at all times in the Library of Congress or other sources to obtain legislative history. There's no argument that this was for some reason unavailable to the parties. So it was available at all times during this litigation, 2009, 2010, and 2011. Then it was considered extensively by the district court in 2012 during final merits before the final judgment. When it came back down. Yes. So my question, and then we can get to the fairness piece, is does that change the situation? I mean, I assume you'd agree that if it came back down, there were factual development and additional things that were added that might have impacted, you know, the ruling, that that could arguably change. Yes, it certainly could. How about legislative history? Yes. Under the exception of the ACLU v. McCasey precedent, new evidence is a recognized exception. That's not actually the exception that's being invoked by the appellants here. They're urging the exception of clear error or manifest injustice, pointing to this legislative history. But the legislative history was available at all times, as I mentioned. Let me ask you this question. In Minority 3, we've been dealing with the issue of whether the merits were ruled on. It seems that they were. But let me ask you, do you think that all of the questions open at the time, all of the merits were addressed, or were there issues that were not addressed that we should be made aware of that makes it a little more tricky? I think that, essentially, all of the legal issues that are back before the court now were addressed, and those include the legal issues of NEPA, whether the National Environmental Policy Act applies as a matter of law to the exercise of these private mineral estates, which this court clearly held it did not, and issued a presidential ruling on that point. The issue of whether the Administrative Procedure Act was violated by the settlement agreement itself, which imposed a new legal regime, a new regulatory regime through the Forest Service through the settlement agreement. That issue was also addressed quite clearly by this court and is now not even an issue that's being re-raised by the appellants in the briefing. And also the interpretation of the WEEKS Act, the Section 9 issue about whether the WEEKS Act applies to these private mineral estates, particularly the outstanding estates at all, and whether on the reserved estates, whether the regulations had to be specified in the deed. This court addressed that very clearly and said that only the regulations that were put in the deeds at the time are what apply following the Fourth Circuit precedent. And then finally, the issues the appellants raised regarding the scope of the property clause were and this court ruled that we're not dealing with the question of what might be the possible extent of Congress's authority, but merely what did Congress do in this WEEKS Act and what authority did it give the Forest Service. So I am hard-pressed to think of any issue now before the court that wasn't fully addressed before. Now how about if you would address Judge Jordan's earlier question. This is kind of a gotcha, comes up on preliminary injunction, likelihood of success, and the panel writes this very comprehensive opinion on the merits that kind of forecloses whatever else might come afterwards. Well, we don't really see it as a gotcha situation because of the extensive opportunity for briefing before and after the preliminary injunction hearing during the motion for reconsideration by the federal government and through the full briefing before this court. There was no request for expedited briefing before this court before. There was no stay sought during the appeal. Was there any statement by the district court or any effort by the plaintiffs in the case to say we'd like to have this preliminary injunction matter treated now as effectively on the merits? Let's get to the merits. We've had a full record developed. Everybody's had their shot. Let's go ahead and treat it that way. In the initial phase of the case before the appeal to this court, it was treated as a preliminary injunction motion. There was no request by the plaintiffs for a full merits ruling at that stage. So what's the answer to the University of Texas case? I'm sorry. The University of Texas case that has been mentioned twice by your opposing counsel in oral argument and is heavily interpreted about the Supreme Court saying generally we just don't want you to do that. We don't want you taking a PI and turning it into a merits resolution, cutting short the argument. Well, I think the answer, Your Honor, is that the district court below did issue a detailed opinion, but based on likelihood of success. That's how the district court addressed it, although it was a very thorough opinion on all the legal issues. When it came to this court, this court did choose to exercise its discretion, as recognized in the ACLU and Pitt News precedent, to choose to go beyond the likelihood of success and address pure legal issues. That's what the court did, and I think that's the distinction, where this court did then take it a step further as it has the ability to do. That panel may well have inquired whether there's anything else to be done, because when it went back down, there was general agreement that nothing more needed to be done before summary judgment was entered. Isn't that pretty correct? The U.S. Forest Service took the view that the Third Circuit had resolved the merits and did not contest them further before the district court. Their only question was what was the extent of the remedy. Should it be a permanent injunction or merely declaratory relief and vacating the settlement agreement and the Martin Statement that implemented the settlement agreement. So that was the position of the U.S. government. The ADP appellants were asked by the district court, do you want further merits briefing of these issues? They said yes. They were granted the opportunity for further extensive briefing on summary judgment in spring of 2012 and further extensive argument before the district court in July of 2012. And that focused primarily on legislative history, is that correct? It focused on legislative history. It focused on their view that NEPA does apply to these actions. It focused on the property clause issues, the same issues we have now before the court. Okay. The final point would be that the appellants have invoked the third exception, seeking a ruling by this court of clear error or manifest injustice, which itself requires a recognition that there are extraordinary circumstances. We don't believe extraordinary circumstances are present. You want to speak specifically to the Supreme Court case, the New Mexico case, that your colleague keeps referring us to, CLEP? The CLEPE case. Is that how you say it, CLEPE? CLEPE, yes. That is a case that recognizes that the Congress has broad powers under the property clause of the Constitution, and the case has been construed to allow potential regulation of private lands to the extent they affect federal lands. But that's the full extent of the constitutional authority of Congress, and this court recognized that that was a distinct question, not really presented by this case, because the question here is, what authority does the Forest Service have under the Weeks Act of 1911 as amended in 1913, and how do we interpret the authority that Congress has granted the Forest Service here, and that's what this court has addressed. We have addressed the merits of the issue as well in our response brief, and the ACLU precedent would indicate that some consideration of the merits is appropriate in evaluating that exception, and we are quite confident that this legislative history is not material in affecting the interpretation of the statute. With that, I'll conclude unless there are any further questions. All right. Thank you very much. Thank you. Ms. Dugan? Thank you, Your Honors. A couple of clarifications. On remand, besides the legislative history, the other issue that was more developed was the record, which included the deeds. There had been kind of a smattering, a random sampling of deeds before the panel in the first appeal, and as we argue in our last part of our reply brief and our opening brief, the deeds have various provisions that give the Forest Service authority over access to the surface, certainly not the right to preclude access. And the reason that's important is because, and this is perhaps an argument in the alternative to my original urging that there is no law of the case, is that even within the confines of the prior panel opinion, I think this court can craft an opinion that says that reading Minard Run 1, which sets forth the rights of Pennsylvania property owners, not sovereigns, because in Minard Run 1, the Forest Service explicitly said it was arguing only as a property owner, even under those limited rights, that is sufficient authority for the Forest Service to do NEPA analysis,  how to protect water resources, how to protect soil, and do reforest, sorry, regreening, revegetation. That is sufficient authority to allow for and require NEPA. You're not disagreeing, though, that what the Minard 3 panel dealt with was a question of law, though, are you? I mean, the questions that were put and that were addressed by the Minard 3 panel were statutory interpretation questions, right? They were, but they were focused on this issue of this vast moratorium that basically shut down the oil and gas industry. They certainly looked at that as a final agency action and a problem, and they dealt with that, but they also dealt expressly with the meaning of the WEEKS Act. They interpreted it. You don't like the interpretation. You've said they inserted the word only effectively when they shouldn't have. They were looking at a pure question of law about the meaning of the WEEKS Act, right? Yes, but even under the WEEKS Act, which under the plaintiff's interpretation and the prior panel's interpretation only allows for application of the laws that are set forth in the deeds, that's where the deeds themselves do become important. If you look at the deeds, there's seven different forms of them. They each have varying amounts of authority for the Forest Service to regulate the access to the surface. Have you briefed this to us? Yes, it's in the section about deeds in the opening and reply brief, which is at the end of the brief. There's a statement that seven deeds ought not rule the day, I think, is sort of your pitch, but the ruling of the Minard III panel was looked at what the 1911 regulations, which they said were the vast majority of the reserve right cases and outstanding right cases were with respect to the meaning of the WEEKS Act. I guess what I'm trying to figure out is are you now telling us, hey, we think there's a fact issue here? Not explicitly a fact issue. The point is that even the least, the deeds that give the least authority to the Forest Service, frankly, give enough authority under state law, under Pennsylvania state law, to allow for environmental assessments to be prepared, which as we explained in the opening brief, in the past were done hundreds of times during the 1980s. And as far as the clear error. Well, they give the deeds, I'm just looking now, they give authority. Right. To? The Forest Service. Okay. But how does that impact? Because once the Forest Service has authority to have some say over what goes on on the surface, as far as where the trees are going to be logged, where we're going to put the road, then they have discretion to make decisions about those things. And they have to do NEPA. And all NEPA does is explain to the public what the impacts are and what the alternatives are. It has no substantive provisions. The Forest Service can't say, well, we want this provision over here. You know, we want this road here. Under NEPA, they can't do that. Under state law, they can't. Because they can under state law, they have that discretion when they issue notices to proceed. Therefore, they need to do under NEPA an environmental assessment explaining to the public what the impacts will be and what the alternatives are. This is mostly as to locations of things. And whether and how to revegetate, how to protect the soils, how to prevent water. This is not technically rebuttal argument because your colleague didn't have an opportunity to address that. But I'm going to give him another minute to address the deed aspect when you're done. Okay. And I do see I'm out of time. If I could just make one very small point, which is that the clear error standard, I would argue, doesn't require unfairness, so to speak. I heard that word. I think it's a question of whether this information was available to the court, whether the court is clearly in error in light of Supreme Court case law and the Constitution. And as for manifest injustice, that would be also injustice to the public. As the minored around one court pointed out, these are the public's resources being held in trust by the government. And so it's not just whether we failing attorneys below failed to brief the court sufficiently on congressional intent and so on, it's whether there's manifest injustice to the public. Thank you, Your Honor. Thank you very much. Mr. McCrum, if you want to address the deed aspect for a minute. Yes, thank you very much for the opportunity to address that. The deed issue is not a new issue. It's addressed in the December 15, 2009 preliminary injunction order. There was evidence taken on that issue. And the record quite clearly shows, and the record that was before this court originally, is that approximately 52% of the mineral estates are outstanding estates, meaning that the mineral estates were already severed before the Forest Service acquired the lands. There are no regulations that apply in that situation. That doesn't mean the Forest Service has no rights. It has rights under Pennsylvania common law to bring an injunction action itself if the operator is not exercising due regard. As to the other 48%, they are reserved mineral estates where a private party conveyed the surface to the Forest Service, reserving the mineral estate. And it's in that context where the Weeks Act requires the regulations to be specified in the deeds. This court previously found based on the record that the vast majority of the reserved mineral estates were based on the 1911 regulations that did not impose a permit requirement, granted minimal authority to the Forest Service, some authority they could enforce in court if they chose to do, but that NEPA was not triggered there. That remains the record today. The administrative record compiled by the Forest Service randomly selected seven reserved mineral estates, and they all had the 1911 seven-paragraph provision. That's the record we have before us now at this phase of the case. The appellants submitted no other evidence that there were more of these other types of deeds present other than the record as it existed. All right, thank you very much. It was helpful.  Thank you, counsel. We'll take the matter.